**STATE of Iowa, Plaintiff–Appellee,**

v.

**Gary KIRCHNER, Defendant–Appellant.**

Nos. 98–0483.

Court of Appeals of Iowa.

June 23, 1999.

Kermit L. Dunahoo of the Dunahoo Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Roxann M. Ryan, Assistant Attorney General, Scott Brown, Assistant Attorney General, and Ed Jacobsen, County Attorney, for appellee.

Considered by SACKETT, C.J., and MAHAN and ZIMMER, JJ.

MAHAN, J.

Gary Kirchner appeals his convictions for first-degree kidnapping, two counts of first-degree burglary, and two misdemeanor offenses. He contends the trial court erred in denying his request for substituted court-appointed trial counsel and denying his motion for a judgment of acquittal on the kidnapping charge. He also maintains he received ineffective assistance of trial counsel. We affirm.

Gary and Melanie Kirchner were married in 1991 and separated in August of 1996. They have three children together and had regular contact with each other when exchanging custody of the children. Gary sometimes stayed at Melanie's home in Cherokee. Gary has a history of threatening Melanie and subjecting her to repeated abuse; there was a no contact order in effect on the day in question.

On Sunday, November 17, 1996, Melanie was scheduled to work at the Coastal Mart in Cherokee. Melanie dressed for work in blue jeans, a sweatshirt, and a thin coat, and Gary agreed to drive her to work. However, Gary did not stop at the Coastal Mart. Instead, Gary continued to drive south on Highway 59 over Melanie's objections.

Eventually, Gary pulled over onto a gravel road, ordered Melanie to go to the back of the car, and retrieved a tire iron from the trunk. Gary then threatened to kill Melanie if she did not admit to having affairs with other men. Melanie denied having any affairs and complied with Gary's order to get back into the car. Once inside, Gary struck Melanie in the face causing a black eye.

Gary next drove Melanie to a farmhouse and pulled her out of the car and into the house. He pushed Melanie into the basement causing a hip injury. Melanie said she thought Gary was going to carry out his threats to kill her; he still had the tire iron. Gary and Melanie then went to the kitchen where Gary continued to threaten Melanie, started to hit the wall with the tire iron, and allegedly hit Melanie in the back of the head with the tire iron. Gary then smashed a ceramic doll, held pieces of glass to Melanie's face, and threatened to slice her with them.

Gary seemed calm after this incident. Thereafter, Gary and Melanie left the farmhouse. Gary drove Melanie to another farmhouse and ordered her to go up to a hayloft. Gary bound Melanie's hands and feet with twine. Melanie lay tied up in the hayloft for forty-five minutes while Gary yelled at her and threatened her. Gary finally untied Melanie and told her to remove her pants. He still had the tire iron so she complied. For approximately five minutes, his penis was in contact with her anus. Gary stopped, put down the tire iron, apologized repeatedly, and allowed Melanie to put her pants back on.

Gary seemed calm again. They went back to the car and went to Gary's parent's home in Correctionville. Melanie took a

hot bath to get warm and then Gary's sister drove her back to Cherokee.

Melanie reported the incident to the police. The investigating officers saw her black eye and found various pieces of physical evidence that corroborated Melanie's account of the events, including damage to the walls and the broken ceramic doll at the first farmhouse, and the tire iron and twine at the second farmhouse. Melanie testified she was terrified throughout the ordeal and thought she would be killed.

On the day before trial was to begin, the court received Gary's request for a different attorney. The hearing was held the following day, outside the presence of prosecutors. The trial court concluded Gary had failed to establish sufficient reason to appoint a different trial attorney. The trial proceeded and the jury found Gary guilty on all counts against him. He was sentenced to a mandatory life imprisonment term on the first-degree kidnapping charge with all other sentences to run concurrently. Gary appeals.

**I. SUBSTITUTED COURT–APPOINTED TRIAL COUNSEL.** Gary contends the trial court erred in denying his request for substituted court-appointed trial counsel. We disagree.

Our review is for abuse of discretion. *State v. Williams*, 285 N.W.2d 248, 254 (Iowa 1979); *State v. Taylor*, 211 N.W.2d 264, 266 (Iowa 1973).

■ "While there is an absolute right to counsel, no defendant, indigent or otherwise, has an absolute right to be represented by a particular lawyer." *Williams*, 285 N.W.2d at 254. The defendant must demonstrate a sufficient reason to substitute a new attorney for the attorney appointed, such as an irreconcilable conflict with the defendant, or a complete breakdown in communication between the attorney and the client. *See State v. Vanover*, 559 N.W.2d 618 (Iowa 1997); *State v. Brooks*, 540 N.W.2d 270 (Iowa 1995); *State v. Hutchison*, 341 N.W.2d 33 (Iowa 1983).

■ On the morning of trial, the trial court held an ex parte hearing to allow Gary to state his reasons for requesting a different attorney. The trial court carefully listened to Gary's reasons and his trial attorney's statements regarding them. The trial court summarized Gary's reasons, stating "he does not trust [his trial attorney] and does not believe that [the attorney] is acting properly to conduct a proper defense in this case." However, he had continued to communicate with his trial attorney up to the time of the hearing and had actually discussed his concerns with his trial attorney. Finally, the trial court addressed the concern that Gary receive adequate representation at trial and recognized Gary's trial attorney is a very capable and experienced criminal defense attorney. The trial court concluded, and we agree, Gary had failed to establish sufficient reason to substitute his trial attorney; it was not an abuse of discretion to deny Gary's request for a different attorney on the morning of trial.

**II. MOTION FOR JUDGMENT OF ACQUITTAL.** Kirchner claims the trial court erred in overruling his motion for judgment of acquittal based on the insufficiency of the evidence. Specifically, he contends there is insufficient evidence to prove either the torture or the sexual abuse alternatives of first-degree kidnapping or specific intent to commit sexual abuse during the confinement or removal. We disagree and note Gary failed to preserve error on the sexual abuse and specific intent issues; however, we will address the merits of these contentions.

■ We will uphold the trial court's denial of a motion for judgment of acquittal if there is substantial evidence in the record to support the defendant's conviction. *State v. McPhillips*, 580 N.W.2d 748, 752 (Iowa 1998). Our review of sufficiency-of-evidence challenges is for correction of errors at law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). The jury's findings of guilt are binding on appeal if

supported by substantial evidence. *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998); *State v. Allen*, 348 N.W.2d 243, 247 (Iowa 1984). Substantial evidence is such evidence as could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Allen*, 348 N.W.2d at 247.

In deciding whether there is such substantial evidence, we view the record evidence in the light most favorable to the State. *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993). Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). A verdict can rest on circumstantial evidence alone. *State v. Torres*, 506 N.W.2d 470, 472 (Iowa App.1993). However, "[t]he evidence must at least raise a fair inference of guilt as to each essential element of the crime. Evidence which merely raises suspicion, speculation, or conjecture is insufficient." *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992) (citations omitted).

**A. Torture.** The trial court instructed the jury that "torture" means the intentional infliction of severe physical or mental pain. II Iowa Crim. Jury Instruction 1000.6 (1998). Our supreme court has addressed this issue as follows:

> Commentators on the criminal code suggest "torture" ordinarily means "the intentional infliction of pain (either) mental or physical," *see* Dunahoo, The New Iowa Criminal Code: Part II, 29 Drake L.Rev. 491, 554 n. 570 (1980), and "the deliberate infliction of severe pain," *see* J. Yeager and R. Carlson, 4 Iowa Practice: Criminal Law and Procedure § 236 (1979). Trial court fashioned a more exacting definition of torture that encompassed the elements these definitions emphasize: that the action be deliberate or intentional, and that pain be inflicted. *See also* Webster's Third New International Dictionary 2414 (1976) ("the infliction of intense pain ... to punish or coerce someone").

*State v. Cross*, 308 N.W.2d 25, 27 (Iowa 1981).

Gary had previously subjected Melanie to threats and physical abuse. He repeatedly threatened to kill Melanie while brandishing the tire iron or hitting the tire iron against the wall. Gary also hit Melanie in the face causing a black eye, pushed her down the basement steps causing a hip injury, and broke a ceramic doll and threatened to cut Melanie's face with pieces of glass. Gary then tied Melanie's hands and feet and left her in the hayloft for forty-five minutes in cold weather for which she was not adequately dressed, during which time he continued to threaten her with the tire iron. Melanie testified that throughout the ordeal she was terrified and thought Gary would kill her. Therefore, we conclude there is substantial evidence to support a finding Gary tortured Melanie by intentionally subjecting her to severe physical or mental pain.

**B. Sexual Abuse.** Sexual abuse occurs when a sex act is performed against the will of the other. Iowa Code § 709.1 (1997). The term "sex act" includes any sexual contact between two persons by contact between the genitalia of one person and the genitalia or anus of another person. Iowa Code § 702.17. Melanie's description of events clearly satisfies the definition of a sex act. The State was not required to supply corroborating evidence of her testimony. Iowa R.Cr.P. 20(3); Iowa Code § 709.6. We conclude there is substantial evidence to support a finding Gary sexually abused Melanie.

**C. Specific Intent.** The element of intent is seldom susceptible to proof by direct evidence. *State v. Finnel*, 515 N.W.2d 41, 42 (Iowa 1994). Rather, proof of intent usually depends on circumstantial evidence and inferences drawn from such evidence. *Id.* "The fact finder may determine intent by such reasonable inferences and deductions as may be drawn from facts proved by evidence in accordance with common experiences and observation." *State v. Howard*, 404 N.W.2d 196, 198 (Iowa App.1987). "The

requirement of proof beyond a reasonable doubt is satisfied if it is more likely than not that the inference of intent is true." *Finnel,* 515 N.W.2d at 42.

The acts of confinement and the intent to commit sexual abuse must coexist for some period of time to constitute kidnapping. Iowa Code § 710.1; *State v. Wilcoxen,* 549 N.W.2d 304, 305–306 (Iowa App.1996) ("No minimum period of confinement or distance of removal is required for conviction of kidnapping."). There is substantial evidence Gary actually sexually abused Melanie; thus the jury could reasonably infer Gary had formed the intent to sexually abuse her. The evidence shows that although Gary did untie Melanie prior to the sexual abuse, Melanie was in the hayloft, dressed inadequately for the cold weather, in a rural area, after hours of confinement, threats, and abuse, and Gary still had the tire iron, which he did not put down until after the sexual abuse incident.

We specifically reject Gary's characterization of the events. Gary claims that once Melanie "had rebuffed his clumsy attempts at rekindling their marital memories for forty-five minutes, he then turned his attention to sex, but was no longer confining her."

We conclude there is · substantial evidence to support a finding that Gary continued to confine Melanie at the time of the sexual abuse and that he had formed the requisite intent to commit the sexual abuse during the confinement.

In summary, after review of the record we conclude there was substantial evidence to support a jury finding that Gary tortured Melanie, sexually abused her, and the requisite intent to commit sexual abuse coexisted with Gary's acts of confinement. It was not error to deny Gary's motion for a judgment of acquittal on the kidnapping charge.

**III. INEFFECTIVE ASSISTANCE OF COUNSEL.** Ordinarily, we reserve claims of ineffective assistance of counsel raised on direct appeal for postconviction proceedings to allow full development of the facts surrounding counsel's conduct. *State v. Atley,* 564 N.W.2d 817, 833 (Iowa 1997). "Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned." *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). However, we will resolve ineffective-assistance-of-counsel claims on direct appeal when the record is adequate to decide the issue. *State v. Arne,* 579 N.W.2d 326, 329 (Iowa 1998).

In the case at bar, Kirchner alleges eleven instances of ineffective assistance of his trial counsel. The State and Kirchner agree these claims should be preserved for postconviction relief.

For these reasons, we affirm Kirchner's convictions and reserve his ineffective assistance of counsel claims for postconviction relief proceedings, if any are brought.

**AFFIRMED.**