# IN THE COURT OF APPEALS OF IOWA

No. 13-1522
Filed June 25, 2014

**IN THE INTEREST OF S.P.**

**S.P., Minor Child,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Carol Egly, (adjudication) and Thomas Mott (disposition), District Associate Judges.

A teenager appeals his juvenile delinquency adjudication for burglary in the third degree. **REVERSED AND REMANDED.**

Joseph Keith Strong of Youth Law Center, attorney and guardian ad litem for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, John P. Sarcone, County Attorney, and Jennifer Galloway, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Sixteen-year-old S.P. challenges the juvenile court's determination he committed the delinquent act of burglary in the third degree. He contends the State's circumstantial evidence fell short of showing beyond a reasonable doubt he entered an occupied structure with the intent to commit a theft, or that he aided and abetted someone who did. Because we agree the State's case against S.P. rested on too many inferences to satisfy the burden of proof, we reverse and remand for dismissal of the delinquency petition.

## I. Background Facts and Proceedings

On the morning of July 9, 2013, Aquanda Carter was out smoking on her back deck when she saw a teenager, later identified as S.P., and his taller companion, later identified as D.M., walking down the alley that ran between her house and Charles Walker's property at 1520 Clark Street. She saw S.P. carrying a bat or stick. Carter watched the pair walk onto the property at 1520 Clark Street. Carter lost sight of S.P. and D.M. when they went between two buildings. Carter then heard pounding. She testified: "it sounded like wood, like beating on wood." Next she noticed the taller boy standing on the corner looking west. She then went inside and called Walker's wife Sandy and told her what was going on.

Charles Walker uses the building at 1520 Clark Street for storage. He was at work on the morning of July 9 when his wife called him and relayed what Carter had seen and heard. When he arrived at his building fifteen to thirty minutes later, he noticed a plexiglass window had been broken. His wife Sandy

was driving in the area and passed the two boys Carter described. Walker followed them in his truck until he met a police officer responding to the call. Walker then returned to his property.

Walker noticed a generator, miter box saw, and a small propane heater were missing. He had stored all these items in the back of his building. He also saw a glass window in the back of the building was broken out and a door in the back was opened from the inside. Walker testified the open door was usually locked. He estimated it was thirty feet from the back door to the alley. Walker also testified that when he checked the building a few days earlier, nothing was missing, no damage was done, and the doors were all secure.

Officers Charles Guhl and Patrick Donahue of the Des Moines Police Department responded to the call. Officer Donahue found two boys matching the description given by Carter walking westbound on Clark Street from Walker's building. S.P. told him they were in the neighborhood looking for side jobs, such as mowing lawns. At this point, S.P. no longer was carrying the bat.

Officer Guhl went to the property and helped Walker look for the missing items. After a search of the surrounding area, they were unable to find any of the allegedly stolen property. They also could not locate a bat or stick as seen by Carter.

As the officers detained the boys, Walker had a chance to talk to them. He said if they returned his belongings he would not "press charges." S.P. looked down, but did not reply. Walker testified D.M. said something like "how

could we carry a generator" though Walker had not told the boys he was missing a generator.  Walker had described the missing items to police.

On July 10, 2013, the State charged S.P. with the delinquent act of burglary in the third degree in violation of Iowa Code sections 713.1 and 713A.6(A)(1) (2013).  The State later added a charge of criminal trespass in violation of Iowa Code sections 716.7(2)(a) and 716.8(2) by amending the delinquency petition on August 27, 2013.

On September 3, 2013, the court held a delinquency hearing.  At the close of the hearing, the court made oral findings that the State had proved beyond a reasonable doubt S.P. committed or aided and abetted in the commission of burglary in the third degree.  The court did not address the trespass charge, finding it was a lesser included offense of the burglary.  S.P. now appeals.

## II. Standard of Review

We review delinquency proceedings de novo.  *See In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013).  "We presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent acts."  *Id.*  Although we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses, we are not bound by them.  *See In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996).  Because juvenile proceedings do not offer the right to a jury trial, a more in-depth appellate review of the facts supporting and opposing adjudication is appropriate.  *A.K.*, 825 N.W.2d at 51.

Delinquency adjudications are special proceedings that serve as an alternative to a criminal prosecution—keeping the best interest of the child as the objective. *Id.*; *In re Henderson*, 199 N.W.2d 111, 116 (Iowa 1972).

**III. Analysis**

The State was required to prove beyond a reasonable doubt the following elements of burglary in the third degree: S.P. entered or aid or abetted another person who entered an occupied structure at 1520 Clark Street, without right, license, privilege, or authority to do so; and did so with the intent to commit a theft.

The State acknowledged at the close of the delinquency hearing that it offered "no direct evidence" that S.P. entered or left Walker's property. But the assistant county attorney highlighted "a variety of circumstantial evidence" supporting the burglary elements. Here is the sum total of that evidence: (1) an eyewitness identified S.P. walking down an alley with what appeared to be a bat; (2) the witness saw S.P. and his companion go between buildings at 1520 and 1522 Clark Street; (3) she then heard pounding of wood on wood but could not see the source of the pounding; (4) she saw S.P.'s companion looking out and around the area of Clark and 16th Streets; (5) alerted by the witness to these events, Walker arrived at his building in less than thirty minutes and found a broken window, a door opened from the inside, and items missing; (6) Walker testified the building was secure when he visited a few days earlier, and had not noticed any damage when driving by earlier that morning on his way to work; and (7) S.P.'s explanation for being in the area to find a lawn job was "inconsistent"

with the amount of time the boys spent around Walker's property. In her closing argument, the assistant county attorney did not mention the specific intent element of burglary nor explain how the juvenile court could infer S.P.'s specific intent to commit theft from the State's evidence.

S.P.'s attorney pounced on the weaknesses in the State's case in his closing argument, concluding, "the only thing that's been proven with any amount of consistency is that [S.P.] was walking around in an alley. [S.P.] was walking around in the street, and neither of those things are in any way illegal." On appeal, S.P. specifically challenges the State's proof he entered the building at 1520 Clark Street or that he had the specific intent to commit a theft.

Upon our de novo review—and by performing the in-depth appellate examination of the facts supporting and opposing adjudication required by *A.K.*[1]—we conclude the State's evidence was insufficient to prove S.P. entered the occupied structure with the intent to commit the theft, or aided and abetted someone who committed the burglary. Our law has no bias against circumstantial evidence. *See* Iowa R. App. P. 6.904(3)(p) (expressing the "well-established" legal proposition that "[d]irect and circumstantial evidence are equally probative."). But like direct evidence, it must raise a fair inference of culpability; if circumstantial evidence does no more than create speculation, suspicion, or conjecture, it is insufficient. *See State v. Clarke*, 475 N.W.2d 193, 197 (Iowa 1991). We consider all the evidence in the record, not just the

---

[1] Our supreme court rejected the argument that the evidence in juvenile delinquency cases should be viewed in the light most favorable to the State. *A.K.*, 825 N.W.2d at 49-50.

evidence supporting the State's case. *See* State *v. Speicher*, 625 N.W.2d 738, 741 (Iowa 2001). Here, the State's evidence cast suspicion on S.P.'s activities on the morning of July 9, 2013, but did not establish all the elements of burglary.

The district court specifically found the testimony of Walker and Carter to be credible. We do not question their credibility. But their testimony, even if believed, did not prove S.P.'s culpability.

Burglary has a specific intent element. Iowa Code § 713.1; *Hughes v. State*, 479 N.W.2d 616, 618 (Iowa Ct. App. 1991). Specific intent is seldom capable of direct proof. *State v. Kirchner*, 600 N.W.2d 330, 334 (Iowa Ct. App. 1999). The State may establish the intent element by circumstantial evidence and reasonable inferences arising from that evidence. *See State v. Acevedo*, 705 N.W.2d 1, 5 (Iowa 2005). To establish liability as aider and abettor, the State must introduce substantial proof to show the accused assented or lent countenance and approval to the delinquent act. *See State v. Allen*, 633 N.W.2d 752, 754-755 (Iowa 2001). Knowledge of the crime is essential, but proof of nothing more than knowledge or mere presence at the scene of the crime is not enough to prove aiding and abetting. *Id.* The State was required to prove either that S.P. had the specific intent to commit a theft when he or an accomplice entered the building, or S.P. had knowledge the principal possessed the necessary intent. *See State v. Lockheart*, 410 N.W.2d 688, 693 (Iowa Ct. App. 1987).

Carter's testimony placed S.P. in the vicinity of Walker's building. She saw him with a bat or stick, but then lost sight of him. Almost

contemporaneously, she heard banging of wood on wood. She did not see S.P. strike the building with the stick, she did not hear glass break, and she did not see anyone entering the building, or any property being removed. In fact, no witness saw anyone entering the building or taking any property. The bat or stick described by Carter was never located.

The police investigation of the reported break-in resulted in more questions than answers. When officers and Walker inspected the building, they found a broken glass window in the back and the door opened from the inside. Walker testified someone with a "small frame" could have crawled through the window; when asked whether S.P. could have done so, he responded: "I question that myself a lot of times. I think he could. It would be difficult, but I think he could." Walker also noticed a plexiglass window on the front of the building was broken out, but that possible entry point was visible from Clark Street. Walker testified he had last been inside his building the previous weekend—three days before this incident. He testified it was possible someone could have broken in during that time period without his knowledge.

Office Guhl recalled police took the boys into custody just a block or two from Walker's shed. He testified it was "nontypical behavior" for perpetrators to circle back to the scene of the crime rather than fleeing the vicinity.

The State presented no evidence S.P. was familiar with the neighborhood or otherwise knew anything of value was stored in Walker's building. Likewise, the State presented no evidence to show S.P. knew that D.M. or someone else

had the intent to take something of value from the shed. Walker testified he had not seen either boy before that day.

Further missing from the State's case was any link between the allegedly stolen items and S.P. Iowa law allows an inference that an accused committed burglary from the possession of recently stolen property. *See State v. Lewis*, 242 N.W.2d 711, 716 (Iowa 1976). But neither S.P. nor his companion were found in possession of Walker's property. The items missing from the shed were too big to be concealed under clothing. In fact, the generator weighed around forty pounds and was stored on a wheeled cart. After detaining the boys about a block from the shed and searching the area, police found none of the missing items.

On appeal, the State relies on a line from Walker's testimony where he recalled D.M. asking while being detained by police, "how could we carry a generator?" even though Walker had not told the boys directly a generator was gone. We do not read a great deal into this out-of-court statement. Walker acknowledged telling the police what was missing and the record does not reflect whether the boys were in earshot of that conversation.

"An inference must do more than 'create speculation, suspicion, or conjecture.' Evidence that allows two or more inferences to be drawn, without more, is insufficient to support guilt." *State v. Brubaker*, 805 N.W.2d 164, 172 (Iowa 2011) (internal citations omitted). Carter's testimony allowed for an inference that S.P. pounded on the shed, while D.M. stood lookout. Walker's testimony concerning his missing items allowed for an inference that someone

recently entered the shed and stole his belongings. But, to sustain its finding of a delinquent act, the juvenile court was also required to infer—without additional evidentiary support—that S.P. had the intent to commit a theft when entering the shed, or knew of the specific intent of an accomplice who entered the shed. Without any proof supporting S.P.'s intent or knowledge, this essential element of burglary rests on mere conjecture. The State failed to prove its case beyond a reasonable doubt.

The State does not make an alternative argument on appeal that we should consider the offense of criminal trespass. And even if we were to consider that offense, we note section 716.8(2) requires proof of damage totaling more than $200 and Walker testified the damage to his building was "between $200 or a little less."

**REVERSED AND REMANDED FOR DISMISSAL OF THE DELINQUENCY PETITION.**