## IN THE COURT OF APPEALS OF IOWA

No. 17-0978
Filed July 18, 2018

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**MATTHEW LEE MURPHY,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Jefferson County, Annette J. Scieszinski (venue) and John M. Wright (trial and sentencing), Judges.

Matthew Murphy appeals from the judgment and sentence entered on his conviction of second-degree sexual abuse. **AFFIRMED.**

Angela L. Campbell of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Matthew Murphy appeals the judgment and sentence entered on his conviction following a jury trial for second-degree sexual abuse, in violation of Iowa Code section 709.3(1)(b) (2016). Murphy asserts the court erred in denying his motions to change venue and to strike jurors. He also asserts his trial counsel was ineffective in failing to object to the court's error related to the motion to strike, in failing to move to strike three other jurors for cause, and in failing to object when a witness violated the motion in limine by vouching for the child victim. Finally, Murphy asserts there was insufficient evidence of sexual abuse. Because Murphy failed to show a substantial likelihood a fair and impartial jury could not be found and because Murphy did not prove prejudice resulting from his use of peremptory strikes, the district court did not abuse its discretion. Also, because the record is inadequate to address Murphy's claims of ineffective assistance, we preserve his claims for postconviction relief. Finally, because the jury verdict was supported by substantial evidence and was not against the weight of the evidence, we affirm.

## I.  Background Facts and Proceedings

The following facts can be gleaned from the evidence presented to the jury. On February 20, 2016, eleven-year-old A.T. and her older sister, M.T., spent the night at Murphy's house. Murphy was a family friend of the girls' parents after being engaged to A.T.'s aunt, her mother's sister. After his fiancé passed away the families remained close. The girls referred to Murphy as "Uncle Matt" and they considered him as part of the family, often scheduling sleepovers even after Murphy became engaged to another woman.

The families scheduled the February 20 sleepover so A.T. and M.T. could meet Murphy's step-daughter-to-be.  On the evening of the sleepover, A.T., M.T., and their mother arrived at Murphy's house at approximately 6:00 p.m.  A.T.'s mother stayed for about one hour to visit with Murphy while the girls played outside on Murphy's trampoline.  When A.T.'s mother left, the three girls went inside to end the night watching scary movies and T.V. shows before bed.

During one of the movies, A.T. approached Murphy and sat on his lap because she was cold.  While she was seated on his lap, Murphy lifted up the waistband of her pants and touched her "private area," inside her underpants.  A.T. acted like she had been asleep then woke up, and Murphy pulled his hand away.  A.T. was scared but still acted like she was asleep, and Murphy went upstairs to get the bed ready while the other two girls stayed downstairs to play cards.  Murphy returned and carried A.T. upstairs to her bedroom where he laid her down on her stomach.  Murphy left the room momentarily.  A.T. saw him reenter the room and heard his footsteps.  He approached the side of the bed and placed A.T.'s hand on his penis.  A.T. still pretended to be asleep with her eyes "barely open."  She saw and felt Murphy move her hand around his penis until she, again, acted like she was waking up because she was shocked and scared.

Once fully awake, A.T. asked to call her mom.  A.T. initially told her mother "goodnight" because Murphy was still in the room.  A few minutes later A.T. went to the bathroom to wash her hand.  Murphy stood in the hallway and said to her, "[Y]ou know I would never let anything happen to you," then picked her up and gave her a hug.  A.T. then asked to use the phone again and she called her mother from the locked downstairs bathroom.  She told her mother that Murphy "touched

her inappropriately" and then told Murphy she was sick and needed her mother to pick her up. Once at home A.T. told her mother what had happened. They then left for the hospital in Ottumwa. After speaking with two police officers at the Ottumwa hospital, they drove to the children's hospital in Des Moines to speak with medical professionals and police and to have a sexual-assault examination performed.

Murphy was charged with two counts of second-degree sexual abuse, one stemming from this incident and one from a prior allegation involving a different child. On July 29, 2016, Murphy filed a motion to change venue and a motion to sever charges. After a hearing on the motions, the court overruled the motion to change venue but granted the motion to sever charges. The court overruled Murphy's second motion to change venue on March 28, 2017. On April 7, 2017, a jury convicted Murphy of second-degree sexual abuse, related to A.T. Murphy filed a motion for new trial, but the court found the jury's guilty verdict was supported by substantial evidence and not against the weight of the evidence, and it overruled Murphy's motion.

Murphy now appeals.

## II. Standard of Review

We review a denial of a motion for a change of venue de novo. *State v. Evans*, 671 N.W.2d 720, 726 (Iowa 2003). "We will reverse only upon a showing the district court abused its discretion in failing to move the trial." *Id.* We review the district court's ruling on a challenge for cause for an abuse of discretion. *State v. Hardin*, 498 N.W.2d 677, 681 (Iowa 1993). Ineffective assistance of counsel claims are reviewed de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa

2001). "Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Finally, we review a district court's decision on a motion for a new trial for abuse of discretion. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006).

### III. Motions to Change Venue

Murphy contends the court abused its discretion in denying his motions to change venue because both motions claimed a fair and impartial jury could not be secured locally. He asserted his position as the director of the South Iowa Area Crime Commission (SIACC) made him prominent in the community and nearby counties, and news reports covering his arrest used his mugshot, in which community members would recognize him. Further, he asserted local news outlets covered a story that originated in Omaha, which reported that he made improper charges on a SIACC credit card for personal items, and the nature of the small town would increase public scrutiny and prevent him from receiving a fair trial in Jefferson County.

A court shall grant a change of venue where the defendant meets the burden of proof of showing the evidence demonstrates that "such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa R. Crim. P. 2.11(10)(b); *Evans*, 671 N.W.2d at 726. In the absence of proof of actual jury prejudice, Murphy must demonstrate that the publicity attending the trial is so pervasive that prejudice must be presumed. *Evans*, 671 N.W.2d at 726. In order to determine whether publicity is presumptively prejudicial, we consider several factors: "the nature, tone, and

accuracy of the articles; their timing in relation to the trial; and the impact of the publicity on the jurors as revealed through voir dire." *Id.* (citing *State v. Siemer*, 454 N.W.2d 857, 860–61 (Iowa 1990)). Prejudice is not presumed based on some jurors' "mere exposure to news accounts." *State v. Newell*, 710 N.W.2d 6, 33 (Iowa 2006).

Murphy contends newspaper articles contained information that was prejudicial and there were significant discussions on social media about his charges. He offered the testimony of Vannen "Rusty" Crabtree, who is Murphy's friend and who saw the discussions on social media, as evidence the discussions were pervasive. Crabtree testified he was stopped on the street by people who wanted to talk about Murphy. However, the record reflects Crabtree was not stopped by the general public but people who knew him and knew of his relationship with Murphy. Furthermore, Crabtree testified he performed his own online search for news and was not able to find much. Crabtree testified he saw two television "spots" and one newspaper article reporting the arrest, which were "factually accurate" and did not lean towards guilt in one way or another. The media reports made part of this record of the sexual abuse charges and SIACC audit appear to be factual in tone and voice no opinion as to Murphy's guilt or innocence.

Upon our de novo review of the record, voir dire questioning appears sufficient to identify any pretrial prejudice by any juror. The media coverage was not inflammatory and any social media discussions were confined to a group of people that knew Murphy and his friend, Crabtree. We agree with the district court that Murphy failed to show "there is a substantial likelihood that a fair and impartial

jury could not be found." Accordingly, the district court did not abuse its discretion in overruling the motions for change of venue.

## IV. Motions to Strike Jurors

Murphy's next claim is the district court abused its discretion by denying his motions to strike four jurors. He also asserts he was prejudiced by the need to use three of his peremptory challenges to remove these jurors. During jury selection, some members of the panel acknowledged having experiences with sexual assault or sexual abuse. Murphy's counsel challenged several individuals for cause and asserted the inherent prejudice that accompanied their experiences prevented them from being impartial. The court granted all but four of the challenges. Murphy then used his peremptory challenges to strike three of those four from the jury.

The test to be applied in a ruling on challenges for cause is "whether the juror holds such a fixed opinion on the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant." *State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993) (internal citation omitted). However, "partiality of a juror may not be made the basis for reversal in instances in which that juror has been removed through exercise of a peremptory challenge." *Id.* at 747. To win reversal following an improper denial of a motion to strike for cause, the defendant must have exhausted all peremptory challenges and show prejudice among the jury that did serve. *Id.*

Our supreme court has held that "[p]rejudice will no longer be presumed from the fact that the defendant has been forced to waste a peremptory challenge." *Id.* Recently, our supreme court ruled that when the district court abuses its discretion by improperly refusing "to disqualify a potential juror under Iowa Rule of

Criminal Procedure 2.18(5)(k) and thereby causes a defendant to expend a peremptory challenge under rule 2.18(9), the defendant must specifically ask the court for an additional strike of a particular juror after his peremptory challenges have been exhausted." *State v. Jonas*, 904 N.W.2d 566, 583 (Iowa 2017). When the defendant asks for an additional strike, "prejudice will then be presumed." *Id.* On the other hand, "where a judge improperly denies a challenge for cause but the defendant does not specifically ask for an additional peremptory challenge of a particular juror after exhausting his peremptory challenges," *Neuendorf* remains good law. *Id.*

Murphy exhausted his peremptory challenges and now claims he would have also struck juror S.H. if he had had another peremptory strike, although he did not request an additional strike during trial. Accordingly, even though our supreme court decided *Jonas* after Murphy's trial but before his appeal, we still proceed under the *Neuendorf* standard, and Murphy has the burden to prove prejudice resulting from his use of his peremptory strikes. *See id.* As a result, even if we assume without deciding that the district court's denial of one of Murphy's for-cause challenges was an abuse of discretion, he still must show prejudice among the jurors who rendered his verdict. *See id.*

Among the jurors who did serve, Murphy only alleges prejudice on the part of juror S.H. During voir dire, juror S.H. said his minor son had been sexually assaulted several years ago. Murphy's trial counsel then engaged juror S.H. in the following exchange:

> Q: Mr. [S.H.], do you think based on your personal experiences that it would be difficult to hear the facts in this case?

A: I don't know, you know, knowing what the facts are. But it might be kind of hard.

Q: Do you think there's anything about your personal experiences that would cause you to think—or to come to an unfair verdict? A: I would hope not. But I'm not in that position yet, and I don't want to be.

Q: Okay. A: You know what I'm saying?

Q: Is there something else you want to add to that? A: No. I just wanted you to know. That's it. I just don't know if after hearing both sides if I could actually come to a rational decision.

Q: Okay. A: I mean, I'd really try because I think I'm a pretty good judge of character. And I work with a lot of guys in different states, you know, and from different countries and stuff, and we get along pretty good. So I hope to think that I'm a good enough judge of character and would weigh it out like it needed to be.

Counsel: Thank you, Mr. [S.H.]. Now, don't take this personally, but I'm going to ask the Judge to strike you for cause.

THE COURT: Denied. Mr. [S.H.], you may return to the panel. Thank you.

S.H. maintained he was a "good judge of character" and would "weigh it out like it needed to be" when answering questions about his ability to be impartial. The district court found S.H. credible, and Murphy did not prove S.H. was prejudiced or biased, nor did he prove S.H. could not be fair and impartial despite some initial uncertainty. Thus, the district court believed S.H. could remain impartial, and Murphy failed to prove that S.H. was prejudiced or biased or that S.H. could not consider all of the evidence and remain impartial. *See Neuendorf*, 509 N.W.2d at 746. Therefore, Murphy cannot establish prejudice, resulting from his striking three jurors and leaving juror S.H. on the panel, under this standard.

## V. Ineffective Assistance of Counsel

### A. Jury Selection

Murphy next argues his trial counsel was ineffective for failing to create an adequate factual record during jury selection with respect to the four jurors, by failing to object to the court's standard, by failing to use a peremptory strike of the

remaining juror, by failing to renew his motion to strike with respect to another juror, and by failing to raise the issue in a post-trial motion.

In order to succeed on a claim of ineffective assistance of counsel, Murphy must prove by a preponderance of evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are usually preserved for postconviction proceedings. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). "That is particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." *State v. Rubino*, 602 N.W.2d 558, 563 (Iowa 1999). The record contains little information about Murphy's trial strategy regarding jury selection, and we conclude the record is not adequate to address these ineffective-assistance claims. Therefore, we preserve these claims for a possible postconviction action.

### B. Motion in Limine

Murphy also claims his counsel was ineffective in failing to object to a seeming violation of the ruling on the motion in limine, which prohibited "[a]ny testimony by any witness that comments, either directly or indirectly, on the credibility of the alleged victim in this matter." Murphy claims the investigator with the Iowa Division of Criminal Investigation "vouched" for the child-victim's credibility. The following exchange took place during trial between the prosecutor and the investigator:

> PROSECUTION: And at some point you made the decision, in conjunction with my office, to file charges against Mr. Murphy; is that correct? INVESTIGATOR: I don't decide whether the charges are made but, yes, the conversation took place that, you know, I believed that what was said had happened actually happened.

Q: And it was at that point that the charges were filed and that's what brings us here today? A: Correct.

The investigator did not meet with A.T. and did not conduct an interview with her. The basis for his conclusion that the incident "actually happened" stems from reviewing the attending officer's report, observing A.T.'s interview with the Child Protection Center through a two-way mirror, and visiting with A.T.'s parents. He did not obtain physical evidence from the sexual-abuse examination. The investigator also conducted an interview with Murphy in which Murphy denied sexually abusing A.T. Murphy asserts the investigator's response was a statement of his own belief that the abuse had occurred, and his counsel was ineffective in failing to object to the testimony because it violated the motion in limine. The State argues the investigator was not an "expert" who was vouching for a victim's credibility. *See, e.g.*, *State v. Jaquez*, 856 N.W.2d 663, 665–66 (Iowa 2014) (holding forensic interviewer's expert testimony that child's demeanor was consistent with a child who had been traumatized after interviewing the child constituted improper vouching). Rather, the investigator was just stating the obvious procedure: if he did not believe the incident "actually happened," no charges would have been filed and the jury "would not have been sitting in the jury box while Murphy was on trial." We note immediately following the investigator's statement, Murphy's counsel objected to a statement that violated the motion in limine concerning evidence obtained upon the execution of a search warrant, and the court sustained his counsel's objection.

Because we do not know trial counsel's objection strategy, including weighing the risk of not objecting to the investigator's response against the risk of

calling the jury's attention to it, we conclude the record is not adequate to address Murphy's claims of ineffective assistance of counsel. Therefore, we preserve his claims regarding the motion in limine for a possible postconviction action. *See State v. Kirchner*, 600 N.W.2d 330, 335 (Iowa Ct. App. 1999) ("[A] lawyer is entitled to his day in court, especially when his professional reputation is impugned.").

## VI. Sufficiency of the Evidence

Murphy asserts the sexual-abuse charge is not supported by substantial evidence and A.T.'s inconsistent statements warrant reversal. The jury's verdict will not be disturbed if it is supported by substantial evidence. *Sanford*, 814 N.W.2d at 615. "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* As always, the jury is free to give weight to the evidence it chooses and reject the evidence it chooses. *Id.*

Murphy claims A.T.'s inconsistent statements are insufficient to prove sexual abuse. However, we note that A.T.'s statements regarding the operative facts behind the charges are consistent. Whatever the reason behind A.T. sitting on his lap, Murphy freely admits A.T. did so during the movie. From that position, A.T. consistently stated Murphy slid his hand underneath her pants. Also, whether A.T. saw Murphy's penis or not, she consistently stated that he made her touch his penis. Lastly, while Murphy points out that A.T.'s statements were inconsistent as to whether she was awake or asleep, or whether she saw his penis or not, A.T. was able to recall the setup of both rooms and provide specific details of each, including remembering what movie was playing. It was then for the jury to determine the credibility of A.T.'s statements. *See State v. Mitchell*, 568 N.W.2d

493, 503 (Iowa 1997). The jury was free to give any or no weight to A.T.'s testimony.

A.T.'s testimony raises "a fair inference as to each essential element of the crime"[1] and could convince a rational jury that Murphy was guilty beyond a reasonable doubt. *State v. McCullah*, 787 N.W.2d 90, 93 (Iowa 2010). The jury's convictions were supported by substantial evidence.

## VII. Weight of the Evidence

Finally, Murphy contends the jury's verdict was contrary to the weight of the evidence, and the district court should have granted his motion for new trial. A court may order a new trial when the verdict is "contrary to the weight of the evidence." *Nitcher*, 720 N.W.2d at 559. (citations omitted). "Unlike the sufficiency-of-the-evidence analysis, the weight-of-the-evidence analysis is much broader in that it involves questions of credibility and refers to a determination that more credible evidence supports one side than the other." *Id.* "[A]ppellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

Here, the jury considered A.T.'s testimony and because it found Murphy guilty, must have determined it to be credible. In evaluating the testimony provided, the district court held, "[T]estimony described . . . what happened in two

---

[1] Jury Instruction No. 14 defined the elements of second degree sexual abuse as:
    1. On or about February 20, 2016, the defendant performed a sex act with A.T.
    2. The defendant performed the sex act while A.T. was under the age of twelve years.
Jury Instruction No. 12 also defined a sex act as including any sexual contact "[b]etween the finger or hand of one person and the genitals or anus of another person."

separate rooms of the home with such detail that . . . she met for the [State] the requirements to show that sexual abuse had occurred." We agree with the district court's conclusion. This is not the extraordinary case where the evidence preponderates heavily against the verdict. The district court did not abuse its discretion in determining the verdict was not contrary to the weight of the evidence.

## VIII. Conclusion

Because Murphy failed to show a substantial likelihood a fair and impartial jury could not be found and did not prove prejudice resulting from his use of peremptory strikes, the district court did not abuse its discretion. Also, because the record is inadequate to address Murphy's claims of ineffective assistance of counsel, we preserve his claims for postconviction relief. Finally, because the jury verdict was supported by substantial evidence and was not against the weight of the evidence, we affirm.

**AFFIRMED.**