**STATE of Iowa, Appellee,**

v.

**Pamela Sue HOPKINS, Appellant.**

No. 97–486.

Supreme Court of Iowa.

March 25, 1998.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, and Allan W. Vanderhart, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

Pamela Sue Hopkins appeals from her conviction and sentence for operating while intoxicated. *See* Iowa Code § 321J.2(1) (1995). She contends the evidence was not sufficient to support her conviction. She also contends her counsel was ineffective because he did not object to a jury instruction defining "operate" and "operating." We affirm.

## I. *Background Facts and Proceedings.*

On September 26, 1995, Robert Niemeier saw a van passing slowly in front of his Rowley, Iowa farm. About a half block from Niemeier, the car stopped on the shoulder of the gravel road. Niemeier put the time between 2:30 and 3:00 p.m. As Niemeier went about his work, he would occasionally look at the van. He noticed the driver move initially and then remain still in the driver's seat.

Thirty to forty minutes later, a concerned Niemeier approached the van. The car's engine was not running. The driver, Hopkins, was unconscious and her head was pitched forward. Her face was blue, and she was drooling. Hopkins did not respond when Niemeier shook her and shouted. Niemeier called 911.

Two members of the Rowley Fire Department arrived on the scene and approached Hopkins' car. They saw Hopkins leaning forward and not breathing. Their medical training told them that Hopkins was cyanotic, so they immediately lifted her chin and opened her airway. Hopkins took a deep, gasping breath at which point she emitted a strong odor of alcoholic beverages. Shortly thereafter, her color improved and she opened her eyes.

Hopkins was very disoriented and not even sure who she was. The two firefighters asked Hopkins if she had drunk any alcoholic beverages; Hopkins stated that she had been drinking earlier that day. The firefighters noticed a key in the ignition.

Buchanan County deputy sheriff Jeffrey Coleman arrived on the scene while the firefighters were working on Hopkins. When Coleman asked Hopkins if she had been drinking, Hopkins responded she had. The deputy noticed that Hopkins was disoriented and smelled strongly of alcoholic beverages.

Hopkins was taken to the hospital where Coleman commenced the implied consent procedures under Iowa Code section 321J.6. Hopkins became upset and belligerent, refusing to provide the blood or urine sample Coleman had requested. She also refused to sign the form acknowledging that she had refused to consent to give a sample.

The State charged Hopkins with operating while intoxicated, third offense, in violation of Iowa Code section 321J.2(1). On the morning of trial and just before jury selection, Hopkins admitted her two prior operating while intoxicated offenses.

One of the firefighters testified, as did Niemeier and Coleman. They related the events we have described above. At the close of the State's evidence, Hopkins moved for judgment of acquittal on the ground that the evidence only showed that she had been drinking that day. The court denied the motion after which Hopkins testified in her defense.

Hopkins testified as follows. She had moved to her home outside of Rowley two weeks before her arrest and was unfamiliar with the area. She had left home because she feared her husband would assault her when he returned from work. She explained: "Usually he wouldn't beat me up if the kids were home, so I drove into Independence and got a pint of whiskey." With that pint of whiskey, she stopped in front of Niemeier's house at "about 1:30." She opened the bottle and began "drinking straight from the bottle." She had a soft drink with her and mixed the whiskey with it. She placed the empty soft drink container on the passenger seat. She could not remember if she consumed the entire bottle of whiskey, but she definitely remembered placing it under the driver's seat.

Hopkins testified her plan was to consume the pint of whiskey, think, avoid her husband, and pick up her children from school between 3:00 and 4:35 p.m. She claimed she did not operate the vehicle while intoxicated. She also claimed she did not cooperate with Coleman because she did not get a chance to

explain herself. She admitted at the time she talked to Coleman, she was intoxicated. She insisted however, she was not intoxicated when she was driving her car.

With this, Hopkins moved for a judgment of acquittal on the same grounds as before. The court denied the motion. Hopkins had no objections to the proposed jury instructions. The jury found her guilty. The court sentenced her to five years incarceration and committed her to the department of corrections for placement in an Iowa Code chapter 321J program.

Hopkins appealed, contending there was insufficient evidence to support her conviction. She also claims her counsel was ineffective because he failed to object to a jury instruction defining "operate" and "operating."

## II. *Scope of Review.*

■ Our review of sufficiency-of-evidence challenges is for correction of errors at law. *State v. Thomas,* 561 N.W.2d 37, 39 (Iowa 1997). The jury's findings of guilt are binding on appeal if supported by substantial evidence. *State v. Allen,* 348 N.W.2d 243, 247 (Iowa 1984). In deciding whether there is such substantial evidence, we view the record evidence in the light most favorable to the State. *State v. Torres,* 495 N.W.2d 678, 681 (Iowa 1993). Substantial evidence is such evidence as could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.*

■ We cannot make a substantial evidence determination if we consider only the evidence supporting guilt. *Id.* This is because a rational fact finder cannot render a verdict without taking into consideration all the record evidence. Therefore, in determining whether there is substantial evidence, we must consider all the record evidence, not just the evidence supporting guilt. *Id.* However, when the evidence is in conflict, the fact finder may resolve those conflicts in accordance with its own views as to the credibility of the witnesses. *Allen,* 348 N.W.2d at 247. In assessing witness credibility and the weight of the evidence, a fact finder is guided by its common sense and prior experience.

*See State v. O'Connell,* 275 N.W.2d 197, 205 (Iowa 1979) (quoting *United States v. Becker,* 62 F.2d 1007, 1010 (2d Cir.1933)).

We review constitutional issues de novo, under the totality of circumstances. *State v. Predka,* 555 N.W.2d 202, 204 (Iowa 1996).

## III. *Sufficiency of the Evidence.*

■ To convict, the State had only to prove that Hopkins operated her car and did so while she was intoxicated. Iowa Code § 321J.2(1). Hopkins contends the evidence was insufficient to prove she was operating her car while intoxicated. In support of her contention, Hopkins argues the firefighters found her unconscious, sitting behind the wheel of her car with the engine off. She relies on her trial testimony that she did not begin drinking until *after* she had parked her car along a country road. At that point, she further argues, she was not then "operating" her parked car because the engine was off and her car was not moving.

■ The State concedes, as it must, that current case law provides there is no "operation" of a motor vehicle within the terms of the OWI statute unless the vehicle is in motion or the engine is running. *State v. Boleyn,* 547 N.W.2d 202, 205 (Iowa 1996). This is because we have approved the definition of "operate" as "the immediate, actual physical control over a motor vehicle that is in motion and/or has its engine running." *Id.* (quoting *Munson v. Iowa Dep't of Transp.,* 513 N.W.2d 722, 724–25 (Iowa 1994) (holding that officer who found defendant asleep in his vehicle with radio on and engine not running did not have reasonable grounds to believe defendant was "operating" vehicle while intoxicated; to be "operating" vehicle, the vehicle must either be in motion or its engine must be running)).

■ But, as *Boleyn* points out, this does not end the inquiry. The evidence may fail to prove that an intoxicated defendant was in the process of operating a motor vehicle when the authorities found him or her. Nevertheless, circumstantial evidence may establish that the defendant *had* operated while intoxicated when driving to the location

where the vehicle was parked. *Id.* Circumstantial evidence, we have said,

> is the proof "of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred." Circumstantial evidence involves two things: (1) "the assertion of witnesses as to what they have observed," and (2) "a process of reasoning, or inference, by which a conclusion is drawn." Circumstantial evidence "must be based upon the evidence given, together with a sufficient background of human experience to justify the conclusion."

*Brewster v. United States,* 542 N.W.2d 524, 528 (Iowa 1996) (citations omitted). Circumstantial and direct evidence are equally probative. Iowa R.App. P. 14(f)(16).

Contrary to Hopkins' contention, we think there is ample circumstantial evidence that she had driven, in an intoxicated condition, to the location where Niemeier and the firefighters found her. The firefighters found Hopkins unconscious in the driver's seat, with all of the controls within her reach. The key was in the ignition. Some thirty to forty minutes before she was found, Niemeier saw Hopkins' car traveling very slowly, come to a stop, and park along the road. Her car was pointed south, in the direction of her home, which was about a quarter of a mile away. Hopkins told the firefighters that she had been drinking *earlier* in the day. She later told deputy Coleman, who arrived soon after the firefighters, that she had been drinking. The firefighters saw no liquor bottles in the car. She admitted she was intoxicated when found.

We agree with the State that the jury could reasonably infer the following scenario from this evidence: Hopkins was driving drunk trying to reach her residence. She was unable to do so because she was too intoxicated. This explains why she was driving so slowly when Niemeier first saw her car, why she pulled over and parked, and why she soon thereafter passed out.

### IV. *Ineffective Assistance of Counsel.*

Hopkins also contends her trial counsel was ineffective because he did not object to a jury instruction which defined the terms "operate" and "operating." In support of her contention, Hopkins argues the instruction no longer reflects Iowa law.

■ We do not usually decide ineffective-assistance-of-counsel claims on direct appeal, preferring to let the parties explore the matter in postconviction proceedings. *State v. Ceron,* 573 N.W.2d 587, 590 (Iowa 1997). Our reason for not doing so is because trial counsel has not had an opportunity to respond to the claim. However, we do consider such claims when the record is clear and plausible strategy and tactical considerations do not explain counsel's actions. *Id.* Because that is the situation here, we proceed to consider the claim.

■ To establish an ineffective-assistance-of-counsel claim under the Sixth Amendment of the federal Constitution, the defendant must show counsel failed to perform an essential duty and prejudice resulted. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 693 (1984). The defendant establishes prejudice by showing "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

■ A. *Failure to perform an essential duty.* The instruction in question read as follows:

> The term "operate," as used in these instructions means to have the immediate, actual physical control over the operating mechanisms of a motor vehicle that is in motion or has its engine running and may include minimal acts of control or activation of mechanical aspects of the vehicle.
>
> A person is "operating" a motor vehicle, as that phrase is used in these instructions, when the person is in a position to have *present or potential capability to activate or direct the movements of the vehicle* regardless of whether the person is exercising that capability at the time of the alleged offense.

(Emphasis added.)

Hopkins' counsel stated to the district court that although he did not like the instruction, it was a correct statement of the

law. Hopkins correctly points out that the italicized portion of the instruction was not at the time and is not now a correct statement of the law.

It is true that in *State v. Weaver*, 405 N.W.2d 852, 855 (Iowa 1987), we approved an instruction worded exactly like that here. The instruction in *Weaver* was based upon a uniform instruction, and we said we were "reluctant to disapprove uniform instructions." *Id.* However, that case is inapplicable as far as the facts here are concerned: Hopkins was found sitting in her car behind the wheel but her car was not moving and the car engine was not running. By contrast, in *Weaver*, the police found the defendant sitting in his pickup truck with the engine *running* and the lights on.

The defendant in *Weaver* claimed that the vehicle was inoperable because the gearbox was locked in the neutral position. *Id.* at 853. Accordingly, the defendant argued that the district court should have modified the instruction by instructing the jury that "the definition [of operating] includes the fact that the operating mechanisms must be able to cause such motor vehicle to move in a lateral direction either forward or backward." *Id.* at 855. We thought the district court was correct in rejecting the defendant's suggestion. *Id.* We did so relying on our prior case law holding that there need not be vehicle movement nor capability of vehicle movement as long as the person was in actual physical control of a car that had its engine running or that was moving. *Id.*

After *Weaver*, the uniform jury instruction committee relying on *Weaver* changed the instruction to read:

> The term "operate" means the immediate, actual physical control over a motor vehicle that is in motion and/or has its engine running.

II Iowa Crim. Jury Instruction 2500.6 (1988); *see also,* Iowa Code section 321.1(48) (" '*Operator*' or '*driver*' means every person who is in actual physical control of a motor vehicle upon a highway.").

Our case law following *Weaver* has relied on the revised instruction. *See, e.g., Munson*, 513 N.W.2d at 724–25. In *Munson*, an officer found a motorist asleep in his car with the radio on and the engine not running. The key was in the ignition. *Id.* at 723. We held that as a matter of law the officer had no reasonable grounds to believe the motorist was "operating" his motor vehicle while intoxicated and therefore had no basis to invoke the implied consent provisions of Iowa Code section 321J.6. Because such reasonable grounds were lacking, we held that under Iowa Code section 321J.12 the Iowa Department of Transportation had no authority to revoke the motorist's drivers license for failing a chemical test. *Id.* at 725.

In *Munson*, the department argued that "a person is operating a vehicle if in a position to have the *present or potential* capability to activate or direct the movement of a vehicle," the same concept—we noted—that was in the *Weaver* instruction. *Id.* at 724. The police officer in *Munson* testified the key was in the ignition, the radio was on, and after the motorist awoke the motorist turned the ignition off. *Id.* The department argued these facts were sufficient to support a finding that the motorist "operated" his vehicle while in the parking lot where the car was *parked*. *Id.* Rejecting this argument, we said:

> The current uniform instruction provides "the term 'operate' means the immediate, actual physical control over a motor vehicle that is in motion and/or has its engine running." II Iowa Crim. Jury Instruction 2500.6 (1988). We approve this definition requiring either the vehicle be in motion or its engine be running.

*Id.* at 724–25. Thus, we rejected any notion that "a person is operating a motor vehicle if in a position to have the *present or potential* capacity to activate or direct the movement of the vehicle."

Hopkins is correct in asserting the instruction given was erroneous because it incorporated this concept. Hopkins' counsel was therefore incorrect when he said the instruction reflected the correct statement of the law.

██ A defendant has the right to representation that is within the normal range of competency. *State v. Rice*, 543 N.W.2d 884, 888 (Iowa 1996). Such competency includes

being familiar with the current state of the law. *See State v. Schoelerman*, 315 N.W.2d 67, 71–72 (Iowa 1982). Without question, counsel here did not know that we had rejected the notion that operating a vehicle includes having the present or potential capacity to activate or direct the movement of a vehicle. As a result, he failed to preserve error for our review regarding the instruction. Thus, counsel failed to perform an essential duty, the first prong a defendant must prove to establish ineffective assistance of counsel.

That, however, does not end our inquiry. Hopkins must also prove prejudice, the second prong for establishing an ineffective-assistance-of-counsel claim.

■■■ B. *Prejudice.* As mentioned, the State had to prove that Hopkins operated her car and did so while she was intoxicated. Under the law, to prove "operated," the State had to establish Hopkins' car was either moving or its engine was running.

In division II of this opinion we sketched out evidence from which we think the jury could easily infer that Hopkins had operated her car while she was intoxicated. Given this evidence, we think there is no reasonable probability the result would have been different even had the district court correctly instructed on the definition of "operate." Thus, we conclude Hopkins has failed to prove the prejudice prong of her ineffective-assistance-of-counsel claim, and for that reason the claim fails.

### V. *Disposition.*

In sum, there was sufficient evidence to support the verdict. In addition, Hopkins failed to prove her ineffective-assistance-of-counsel claim. We therefore affirm.

**AFFIRMED.**