**IN THE COURT OF APPEALS OF IOWA**

No. 14-1222
Filed June 10, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSHUA J. JENNINGS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Karen K. Salic, District Associate Judge.

Joshua Jennings appeals his judgment and sentence for third-degree criminal mischief. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Joseph A. Fraioli, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Rachel Ginbey, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, J.**

A jury found Joshua Jennings guilty of third-degree criminal mischief. On appeal, Jennings contends (1) the jury's finding of guilt is not supported by sufficient evidence and (2) the district court's restitution award is excessive.

## I. Sufficiency of the Evidence

The jury was instructed the State would have to prove the following elements of criminal mischief:

> 1. On or about the 30th day of March, 2014, the Defendant damaged, defaced, altered or destroyed Joseph Yezek's vehicle.
> 2. The Defendant intended to do the act which damaged, defaced, altered or destroyed the property.
> 3. When the Defendant damaged, defaced, altered or destroyed the property, he did not have the right to do so.

See also Iowa Code § 716.1 (2013). The jury was further instructed "Criminal Mischief in the Third Degree occurs when the cost of replacing or repairing the property is more than $500 but not more than $1000." See also id. § 716.5.

Jennings contends "there is no direct evidence linking [him] to Yezek's damaged vehicle." He asserts the district court should have granted his motion for judgment of acquittal because "no one personally observed [him] damage Yezek's vehicle," "the police investigation yielded no physical evidence inculpating [him]," and his sister testified he "was asleep at her house . . . when she woke up" the next morning. The State counters that strong circumstantial evidence implicated Jennings in the crime. Circumstantial evidence is,

> the proof of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred. Circumstantial evidence involves two things: (1) the assertion of witnesses as to what they have observed, and (2) a process of reasoning, or inference, by which a conclusion is drawn. Circumstantial evidence must be based upon the evidence given,

together with a sufficient background of human experience to justify the conclusion.

*State v. Hopkins*, 576 N.W.2d 374, 377-78 (Iowa 1998) (internal citations and quotation marks omitted).

A reasonable juror could have found the following facts. Jennings' ex-girlfriend, Pauline, and her friends were playing pool at a bar when Jennings showed up "mad." Pauline decided to leave but was stopped by Jennings. Eventually, she left with a friend. Jennings followed. He "yell[ed]," called Pauline names she did not "care to repeat," and asked her why she did not "want to go with him." He also confronted one of her friends. The police were called, and Jennings left, although Pauline heard his truck, with its "distinct exhaust . . . noise," continue to drive by.

Meanwhile, Pauline's new boyfriend, Joseph Yezek, got off work and drove to Pauline's friend's house in a black truck with license plate BXP 896. He and Pauline eventually returned to Pauline's house. In the interim, Pauline received a spate of text messages from Jennings, all referring to Yezek and his truck: "You were gon[n]a jump in with the guy in t[h]e black truck" (11:07 p.m.); "Your acting dumb your makin me do this" (11:11 p.m.); "Bxp896" (11:13 p.m.); "C you are a whore lil black truck wont exist much longer" (2:51 a.m.).

Pauline and Yezek went to bed, only to "hear [Jennings] driving by" and "circling the block." The following morning, Yezek discovered damage to his truck in the form of a cracked windshield and broken glass in the front door. Inside his truck were shards of glass and a cement landscaping block. Pauline

knew Jennings had a similar brick in his yard. A police search of the yard uncovered a "disturbed" area.

A reasonable juror could have inferred that Jennings intentionally damaged Yezek's vehicle. Although there was no eye witness to the crime, the police investigation did not conclusively implicate him, and Jennings's sister afforded him an alibi, substantial circumstantial evidence supported the jury's finding of guilt. *See State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011) (finding "circumstantial evidence equally as probative as direct"); *State v. Hennings*, 791 N.W.2d 828, 832 (Iowa 2010) (setting forth substantial evidence standard of review); *State v. Liggins*, 557 N.W.2d 263, 269 (Iowa 1996) ("A jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive."). Accordingly, we affirm the jury's finding of guilt.

## II. *Restitution*

Following a restitution hearing, the court ordered Jennings to pay Yezek $613.32. Jennings asserts "the State failed to prove . . . Yezek 'sustained' damages in that amount." While acknowledging the State introduced a repair estimate totaling $613.32, Jennings asserts the estimate was insufficient to establish the restitution sum in light of his testimony that Yezek sold the truck without having it repaired.

The district court addressed this assertion as follows:

> [T]here is no credible evidence that Mr. Yezek even sold his vehicle or that it was sold without repair. Mr. Yezek and Mr. Jennings do not seem to have the type of relationship where they would be privy to each other's personal business transactions, so any representation by Mr. Jennings about such a sale carries little

weight. Further, Defendant's testimony lacks credibility that he would pay the same for the vehicle whether the windows were still smashed out or not. There is no doubt that if Mr. Yezek did in fact sell the vehicle without repair, the buyer paid less for it because of the condition. The only credible evidence of the value of what that reduction could be is $613.32.

These findings are supported by substantial evidence. *See State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001) (setting forth standard of review).

At the restitution hearing, the district court took judicial notice of a glass company employee's trial testimony concerning the repair estimate she prepared. The estimate itemized costs of $262.15 for the windshield and $351.17 for the glass in the front door. While Jennings obtained another estimate totaling $325 and insisted Yezek sold the vehicle without repairing it, the district court was not obligated to accept this testimony. *See State v. Moredock*, No. 14-0745, 2015 WL 1046184, at *2 (Iowa Ct. App. Mar. 11, 2015).

We conclude the district court did not err in imposing restitution of $613.32. In light of our conclusion, we find it unnecessary to address Jennings's request to revisit the formula for calculating restitution where a victim sells rather than repairs the damaged property.

**AFFIRMED.**