# IN THE COURT OF APPEALS OF IOWA

No. 17-1454
Filed November 21, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSEPH BRIGHT,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Joseph Bright appeals from a conviction of indecent exposure. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**DANILSON, Chief Judge.**

Joseph Bright appeals from his conviction for indecent exposure, in violation of Iowa Code section 709.9 (2016), following a jury trial. He challenges the sufficiency of the evidence that his exposure of his erect penis was done with the specific intent to arouse or satisfy his sexual desire. He also asserts trial counsel was ineffective in failing to object to the admission of the video recording of Bright's statements to police. We find substantial evidence supports the conviction, and we preserve Bright's ineffectiveness claim for possible postconviction proceedings.

**I. Background Facts.**

On May 18, 2016, Catherine Leever went to Staples for office supplies. She pulled into a parking space and noticed a man (later identified as Joseph Bright) sitting in his car in the spot next to her car on the passenger side. She shopped in the store for approximately thirty to forty minutes. When she returned to her car, Bright's car was now parked on the driver's side of her car and was parked close enough that she was "taken aback" and "a little fearful." Leever decided to enter her car from the passenger side. As she loaded her packages into her car, she glanced out the driver's-side window to Bright's car where she saw him "laying back in his car with his penis fully erect point to the ceiling of his car." On cross-examination, when defense counsel asked whether she saw acts of masturbation or self-gratification, Leever stated, "I saw Mr. Bright with his penis straight up in the air to the roof." All four of Bright's car windows were open and his seat was reclined. Leever was alarmed and climbed over her center console to get into the driver's seat, avoiding eye contact with Bright. She testified there were few other

cars in the parking lot. She "wanted to get out of there." Leever drove to another part of the parking lot and called 9-1-1. At the dispatcher's request, Leever followed Bright for about seven or eight minutes as he left the Staples parking lot, entered a Walmart parking lot and left, turned into a gas station, and then came out of the gas station lot. During this process, Leever was able to provide the dispatcher with a partial license plate number for Bright's car. The dispatcher later informed Leever that police had Bright at a gas station.

Police officer Mark Parks responded to a call from dispatch about a man wearing an orange shirt and a white hat and driving a dark-colored four-door sedan with a partial plate A-M-Y. Officer Parks located Bright at a gas station across from Staples. Upon questioning, Bright stated he was in the area to purchase a fish from a pet store. Bright was wearing a baggy orange t-shirt and "track suit, or sweatpant type" pants. After further questioning about his presence in the area, Bright stated his boxers were uncomfortable and he had "adjusted himself."

Four other officers also arrived at the gas station and Bright was questioned for about forty minutes. Officer Brock Muhlbauer was another of the officers who responded to the gas station. Officer Muhlbauer

> asked [Bright] what he was up to today, and he—or that day, and he said he was buying a fish at PetSmart. I asked him if he knew anything about exposing himself, and he said that he had to adjust himself in the parking lot. And I asked what he meant by that, and he said he had a wedgie, that he had to take care of that.

Detective James Wilson questioned Bright, and Bright repeatedly denied having been in the Staples parking lot. However, he later acknowledged he "had stopped long enough to adjust himself or adjust his boxers." Then Bright explained his two parking locations to Detective Wilson, "He started to back out, realized that

he still wasn't comfortable, and immediately pulled back over again." Bright acknowledged to Detective Wilson he had a partial erection. When Detective Wilson "told him it was virtually impossible for her to be able to see that he had an erection if his pants weren't down, to—at which point he finally said that, yes, they had been down maybe [two] inches."

The video recording of Bright's interaction with the police officers was admitted into evidence. Defense counsel did not object to the recording's admissibility. In fact, defense counsel asked that the unredacted version of the recording be played in its entirety. In closing arguments, defense counsel referenced the video, noting Bright did not admit exposure despite "constant questioning" over a forty-minute period by several officers.

## II. Scope and Standards of Review.

"Sufficiency-of-the-evidence challenges are reviewed for correction of errors at law." *State v. Jorgensen*, 758 N.W.2d 830, 834 (Iowa 2008).

## III. Discussion.

"Indecent exposure is 'essentially a visual assault crime.'" *Id.* at 835 (quoting *State v. Bauer,* 337 N.W.2d 209, 211 (Iowa 1983)). Indecent exposure is defined in Iowa Code section 709.9:

> A person who exposes the person's genitals or pubes to another not the person's spouse . . . commits a serious misdemeanor, if:
> (1) The person does so to arouse or satisfy the sexual desires of either party; and
> (2) The person knows or reasonably should know that the act is offensive to the viewer.

There are four elements of the crime of indecent exposure:

> (1) The exposure of genitals or pubes to someone other than a spouse . . . ;

> (2) That the act is done to arouse the sexual desires of either party;
> (3) The viewer was offended by the conduct; and
> (4) The actor knew, or under the circumstances should have known, the victim would be offended.

*Id.* at 834 (quoting *State v. Isaac*, 756 N.W.2d 817, 819 (Iowa 2008)).

Bright contends the State failed to produce sufficient evidence that his exposure was done with the specific purpose to arouse the sexual desire of either himself or Leever. "Whether a defendant's exposure of his genitals to another person was done for the purpose of arousing the sexual desires of himself or the viewer can be inferred from the defendant's conduct, his remarks, and the surrounding circumstances." *Isaac*, 756 N.W.2d at 820.

In a sufficiency-of-evidence challenge, we consider all the evidence viewed in the light most favorable to upholding the verdict. *State v. Showens*, 845 N.W.2d 436, 439 (Iowa 2014). "If the jury's verdict is supported by substantial evidence, it is binding on the court." *State v. Corsi*, 686 N.W.2d 215, 218 (Iowa 2004). "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998).

Bright was in a parking lot for at least thirty to forty minutes in mid-afternoon. After Leever parked next to Bright's car and entered the store, Bright repositioned his vehicle to—and near—Leever's driver's-side door, all four windows of Bright's car were down, he had his penis visible outside of his shorts, and he knew or should have known his erect penis would be visible to others, particularly to the person who would return to Leever's car. *See Jorgensen*, 758 N.W.2d at 836 ("It is reasonable to assume that a person who exposes himself in a public place runs

the risk that he will be observed by more than his targeted audience."). Bright's sexual intent can be inferred from the circumstances of the exposure. We conclude that a reasonable jury could infer from all the surrounding circumstances that Bright specifically intended to expose his erect penis to arouse his or someone else's sexual desire.

Bright also asserts defense counsel should have objected to admission of the video recording of his discussion with police officers, or at least requested a limiting instruction. The State responds that defense counsel made a reasonable strategic choice to embrace the contents of the videotape to paint the officers in a negative light.

We generally reserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings, "where counsel can have his or her day in court to respond to the defendant's charges." *State v. Coleman*, 907 N.W.2d 124, 142 (Iowa 2018). "This is especially appropriate when the challenged actions concern trial strategy or tactics counsel could explain if a record were fully developed to address those issues." *State v. McNeal*, 867 N.W.2d 91, 105-06 (Iowa 2015). Because we believe Bright's challenge requires a more fully developed record, we preserve his claim for possible postconviction-relief proceedings.

**AFFIRMED.**