**IN THE COURT OF APPEALS OF IOWA**

No. 17-1833
Filed November 21, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**ISAI SANCHEZ-CASCO,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Scott County, Mark D. Cleve, Judge.


     Isai Sanchez-Casco appeals his conviction for operating while intoxicated, third offense. **AFFIRMED.**


     Christopher Raker and Stuart G. Hoover of Blair & Fitzsimmons, PC, Dubuque, for appellant.

     Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


     Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

Isai Sanchez-Casco appeals his conviction for operating while intoxicated (OWI), third offense.  He argues the district court abused its discretion in allowing expert testimony on intoxication, and he appeals the denials of his motion for judgment of acquittal and motion for new trial.  We find the State presented an adequate foundation for the expert testimony.  We also find the verdict is supported by substantial evidence and the court did not abuse its discretion in denying his motion for new trial.  Therefore, we affirm.

I.      **Background Facts and Procedure**

At about 1:30 or 1:40 a.m. on May 16, 2017, Isai Sanchez-Casco parked a black Chrysler next to a gas pump at a convenience store in Davenport.  He entered the store, picked up a bottle of beer, and proceeded to the counter to make his purchase.  The clerk who worked behind the counter at the time asked for his identification.  He responded by asking her for a cigar.  She again asked for his identification, and he asked, "If I don't give you my ID, will you be arrested?"  He then gave her his identification, and she completed the transaction.  He left the store by kicking the first exit door and then the second, opened his bottle of beer, threw the cap in the parking lot, put the open bottle on top of the black Chrysler, and began pumping gas.  The clerk called the police after witnessing this because "it's not normal to open up a bottle of beer and put it on top of your car while you're pumping gas.  It's just not safe.  And open container, you know."  When Sanchez-Casco noticed her on the phone, he extended his middle fingers at her and "decided to do his own display around the parking lot for a minute" by "driving backwards through the whole parking lot."  He then parked, reentered the store,

called her a "motherf**king c**t," threw something like plastic silverware at her, and "stormed out again." Finally, "[h]e did a tour around the parking lot again, . . . proceeded to get out and throw a coffee mug at" the store window—shattering the mug—and drove away. The encounter was captured on store surveillance video.[1] On cross-examination, the clerk testified she had worked as a bartender for over twenty years, and she did not smell alcohol on Sanchez-Casco or otherwise think he was intoxicated when he was in the store.

At or around 1:42 a.m., Sergeant Janet Martin with the Davenport Police Department received a call regarding the clerk's complaint. The call included descriptions of Sanchez-Casco and the black Chrysler with a partial license plate number. Sergeant Martin was several blocks away from the convenience store at the time, and she began driving toward the store hoping to encounter the described vehicle along the way. As she neared the vicinity of the convenience store, she noticed a black Chrysler with a matching partial plate parked at a second convenience store across the street from the first store. She stopped to investigate, and she found Sanchez-Casco walking out of the second store. She did not see anyone with him or near the Chrysler. She approached Sanchez-Casco, patted him down, and searched his pockets with his consent.[2] She found a key to the Chrysler in his pocket. She noticed he was swaying, had a strong odor of alcohol coming from him, had bloodshot eyes, and was exhibiting erratic behavior. Officer Brenton Joyce soon arrived, and he observed Sanchez-Casco

---

[1] According to time stamps on the store surveillance video, Sanchez-Casco first entered the store at 1:38 a.m. and drove away from the store at 1:45 a.m.

[2] According to surveillance video from Sergeant Martin's police cruiser, this interaction occurred at 1:50 a.m.

display erratic behavior, bloodshot eyes, slurred speech, impaired balance, odor of alcohol, dilated pupils, profuse sweating, and nervous tics.

Sergeant Martin called Officer Jennifer Brewer to the scene because of her expertise in recognizing alcohol and drug intoxication. Officer Brewer testified all officers are trained to detect intoxication generally and can perform standard field sobriety testing but they call her when they suspect intoxication by something other than alcohol. To identify intoxication and the category of drug or alcohol causing it, she uses a twelve-step process, which involves "looking at the totality of the circumstances," including "appearance, behavior, moods, and then, the psychophysical testing."

Officer Brewer approached Sanchez-Casco while he was seated in the back of Sergeant Martin's police cruiser. She testified about their interaction:

> When I opened the rear door, I could smell the odor of alcohol right away. . . . As I was speaking to him, he would say things that I just couldn't understand, and then he would say, "Does that make sense?" And I was like, "Not really."
> . . . .
> I couldn't understand because his speech was slurred and he was, just, running words together. I couldn't understand what he was saying. He was very, very talkative, he spoke quickly, and his movements were exaggerated. He was irritable. His speech was the thick tongue and slurred. And then, the odor of alcohol was stronger when he was speaking to me.
> . . . .
> After I spoke with him, I believed that he, too, was not only under the influence of alcohol, but also under the influence of a drug. As I was speaking with him, he—he continuously had tics, that he kept, you know, moving and jerking. He, at one point, started yelling and screaming at me and was telling me to f**k off, things like that. I told him that I believed that he had been driving under the influence and I asked him if he would perform the three standardized field sobriety tests for me at this time.
> . . . .
> I asked him to perform the HGN test, and he said, "No. F**k that." I asked if he would perform the walk-and-turn test. He said, "I

don't have s\*\*t to do. You don't have no probable cause, so f\*\*k you." I asked if he would try the one-leg stand test. He said, "Nope."

She then asked him to provide samples of his breath, blood, or urine, and he flatly refused to provide any samples.[3] Due to his total lack of cooperation, she could not continue the twelve-step evaluation process. The officers placed him under arrest for OWI.

On September 5, Sanchez-Casco proceeded to trial, at the conclusion of which the jury found him guilty of OWI. Following the verdict, he stipulated to having two prior convictions for OWI.[4] Accordingly, the district court convicted him of OWI, third offense,[5] and sentenced him to a term of incarceration not to exceed five years plus fines, fees, and surcharges. He now appeals, arguing the court abused its discretion in allowing Officer Brewer to provide expert testimony on his intoxication. He also appeals the district court's denials of his motion for judgment of acquittal and motion for new trial.

## II.     Expert Testimony

Sanchez-Casco appeals the court's decision to allow Officer Brewer to provide testimony as an expert witness on intoxication. We review evidentiary rulings, including the admission of expert testimony, for abuse of discretion. *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015). "Iowa is generally 'committed to a liberal view on the admissibility of expert testimony.'" *Id.* at 153 (quoting *Ranes v. Adams Labs. Inc.*, 778 N.W.2d 677, 685 (Iowa 2010)). A qualified expert "may

---

[3] According to surveillance video from the police cruisers, Officer Brewer asked Sanchez-Casco to provide samples at 2:08 a.m.

[4] Sanchez-Casco does not challenge his stipulation to having two prior OWI convictions.

[5] OWI, third or subsequent offense, is a class "D" felony. Iowa Code § 321J.2(2)(c) (2017).

testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Iowa R. Evid. 5.702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Iowa R. Evid. 5.703.

The State explored Officer Brewer's qualifications at trial. She has been a police officer for over twelve years and participated in over 500 OWI investigations in that time. In addition to standard law-enforcement training, Officer Brewer became a standardized field sobriety instructor in 2010, which requires demonstrated proficiency, a one-week course, and recertification every three years. As a standardized field sobriety instructor, she teaches other officers how to conduct standardized field sobriety tests. She has certification in Advanced Roadside Impaired Driving Enforcement, which teaches additional field sobriety tests. She is also a certified drug recognition expert, which requires three-and-one-half weeks of state-level training to achieve the state certification and an additional week of national-level training to achieve the national certification. As a drug recognition expert, she is trained to recognize intoxication from seven different drug categories. She uses a twelve-step process to recognize intoxication and the substances involved. The record demonstrates Officer Brewer is well-qualified to opine on intoxication from alcohol and other substances. *See* Iowa R. Evid. 5.702. Therefore, the court did not abuse its discretion in admitting her as an expert witness on intoxication.

Nonetheless, Sanchez-Casco argues Officer Brewer did not provide sufficient foundation for her expert opinion to recognize intoxication from non-

alcohol substances without psychophysical testing.[6]  He notes she extensively discussed her training in psychophysical testing, but she never performed the testing.  However, Officer Brewer testified about her considerable training in recognizing intoxication from both alcohol and non-alcohol substances.  She testified about the twelve-step process she uses for recognizing intoxication, which includes evaluating the subject's behavior and appearance in addition to performing psychophysical testing.  She used her training to conclude he was intoxicated based on his appearance and behavior, noting "he continuously had tics" and he kept "moving and jerking."  Accordingly, she provided a sufficient foundation for her opinion that he was intoxicated—from alcohol, other drugs, or both.  While his behavior prevented her from performing the psychophysical testing, she relied on other factors in reaching her opinion, and the absence of testing alone does not render her testimony inadmissible.  *See Tyler*, 867 N.W.2d at 153 ("A lack of absolute certainty goes to the weight of the expert's testimony, not to its admissibility." (quoting *Johnson v. Knoxville Cmty. Sch. Dist.*, 570 N.W.2d 633, 637 (Iowa 1997))).

### III.    Sufficiency of the Evidence and Weight of the Evidence

During trial, Sanchez-Casco orally moved for judgment of acquittal, and the court denied the motion, finding substantial evidence to support the charge of OWI. After the verdict, he filed a motion for new trial claiming "the verdict is contrary to law or evidence," which the court also denied.  On appeal, he claims the court

---

[6] The jury instructions included the charge that Sanchez-Casco "did operate a motor vehicle while under the influence of an alcoholic beverage or drugs or a combination of such substances, in violation of Section 321J.2(2) of the Code of Iowa."

erred in its denial of both the motion for judgment of acquittal and the motion for new trial. He frames both claims as a challenge to the sufficiency of the evidence. However, our supreme court has explained the two motions have distinct standards:

> On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied.
>
> On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.
>
> . . . . The motion [for new trial] is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

*State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998) (quoting 3 Charles A. Wright, *Federal Practice and Procedure* § 553, at 245–48 (2d ed.1982)).

### A. Sufficiency of the Evidence

To the extent Sanchez-Casco challenges the denial of his motion for judgment of acquittal, his challenge is to the sufficiency of the evidence. *See id.* We review insufficient-evidence claims for errors at law. *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). A verdict has sufficient evidence if it is supported by substantial evidence. *Id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

"A person commits the offense of operating while intoxicated if the person operates a motor vehicle in this state . . . [w]hile under the influence of an alcoholic beverage or other drug or a combination of such substances." Iowa Code § 321J.2(1)(a) (2017). Regarding intoxication, Officer Brewer opined Sanchez-Casco was intoxicated by both alcohol and non-alcohol substances. She based her opinion on her training, her personal interactions with him, and her discussions with Sergeant Martin and Officer Joyce. Sergeant Martin, Officer Joyce, and the store clerk all testified about their observations of Sanchez-Casco's odd and irritable behavior. The jury can personally observe his behavior in the surveillance videos from the first convenience store and the police cruisers. Finally, he refused to provide breath, urine, and blood samples for testing. *See State v. Bloomer*, 618 N.W.2d 550, 553 (Iowa 2000) (finding evidence a defendant refused to submit to a breath test was admissible at trial for OWI when the defendant did not consent to a test with the arresting officer and did not obtain an independent test). This provides substantial evidence for a reasonable jury to conclude he was under the influence of alcohol, another substance, or a combination of substances on the morning of May 16, 2017.

The record supports finding Sanchez-Casco operated a vehicle at both convenience stores on the morning of May 16, 2017. First, the store clerk witnessed Sanchez-Casco operating the Chrysler while driving around and away from the first convenience store. She testified he was already displaying odd and irritable behavior at this point. Her testimony about his behavior in the store and the officers' testimony about finding him intoxicated a little later that morning provide sufficient evidence for a reasonable jury to conclude he was driving while

intoxicated at the first convenience store. He notes the clerk testified she did not believe he was intoxicated while in the store based on her experience as a bartender. However, Officer Brewer testified Sanchez-Casco intoxication resulted from consuming both alcohol and other substances.[7] Therefore, even considering the clerk's opinion on his intoxication, the jury was able to accept Officer Brewer's testimony that he was intoxicated by alcohol, another substance, or a combination while driving at the first convenience store.

Second, officers found a Chrysler parked at the second store that matched the description of the vehicle from the first store. No one was with Sanchez-Casco who could have driven the vehicle instead of him, and the key to the Chrysler was in his pants pocket. This evidence supports finding he drove the Chrysler to the second store. *See State v. Hopkins*, 576 N.W.2d 374, 377–78 (Iowa 1998) (allowing circumstantial evidence to establish a defendant was "intoxicated when driving to the location where the vehicle was parked"). When considering the evidence of his intoxicated state when the officers encountered him at the second store, a reasonable jury had sufficient evidence to conclude he drove the Chrysler to the second store and he was intoxicated at the time.

Sanchez-Casco notes the exact time Sergeant Martin found him at the second store is not in the record. He asserts this missing time means the State cannot establish when he drove to the second store and whether he was intoxicated at the time. However, the store clerk testified Sanchez-Casco arrived

---

[7] Although the store clerk gave detailed and credible testimony based on her observations and prior experience as a bartender, counsel did not go further in exploring her qualifications to opine on intoxication. By contrast, Officer Brewer provided a significant foundation to render an opinion on intoxication.

at the first store at about 1:30 or 1:40 a.m. She called the police to report his behavior, and Sergeant Martin was notified of the call at or about 1:42 a.m. Sergeant Martin then drove toward the first store, and she found him at the second store after driving several blocks. While these facts cannot establish the exact time Sergeant Martin encountered Sanchez-Casco, the facts show she was alerted to his behavior no more than about twelve minutes after he arrived at the first store and she found him only after the time needed to drive several blocks to the second store. Therefore, a reasonable jury could conclude he drove to the second store shortly before Sergeant Martin encountered him and the intoxicated state officers described reflected his condition minutes earlier while driving to the second store.

Sanchez-Casco points to other evidence that suggests he was not driving while intoxicated on the morning in question. Besides the single beer at the first store, no one saw him consume drugs or alcohol. Officers did not find drugs or alcohol on him or in the Chrysler. Other than his actions in the first store's lot, no one saw him driving erratically or otherwise driving at all. His signs of intoxication increased considerably between the descriptions provided by the store clerk, Sergeant Martin, and Officer Brewer. He never displayed certain signs of intoxication, such as falling down or vomiting. He never underwent objective testing for intoxication. He was able to make all of these arguments to the jury, and the jury was entitled to disregard them. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). Even considering his arguments, the evidence described above is sufficient for a reasonable jury to convict him of OWI.

### B. Weight of the Evidence

To the extent Sanchez-Casco challenges the denial of his motion for new trial, his challenge is to the weight of the evidence. *See Ellis*, 578 N.W.2d at 658–59. We review weight-of-the-evidence claims for abuse of discretion. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). Establishing an abuse of discretion requires showing "the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* at 202. "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 203.

As explained above, Officer Brewer opined Sanchez-Casco was intoxicated based on her training, her interactions with Sanchez-Casco, and her discussions with Sergeant Miller and Officer Joyce. All three officers and the store clerk provided testimony about his odd and irritable behavior and other indicia of intoxication, which was supported by surveillance video. Their observations of his intoxicated condition occurred in close temporal proximity to his operation of a vehicle. Even considering his evidentiary arguments that question whether he committed OWI, we find the court did not abuse its discretion in finding the verdict was not contrary to the weight of the evidence. *See id.* Therefore, the court did not abuse its discretion in denying his motion for new trial.

### IV.   Conclusion

The district court did not abuse its discretion in allowing Officer Brewer to present expert testimony. The court also did not err in finding the verdict was

supported by substantial evidence, nor did the court abuse its discretion in finding the verdict was not contrary to the weight of the evidence.  Therefore, we affirm.

**AFFIRMED.**